### Crutcher & Starks, et al. v. Starks, et al.

### Starks Co., et al. v. Crutcher & Starks, et al.

(Decided December 18, 1914.)

Appeals from Jefferson Circuit Court
(Chancery Branch, First Division).

1. Competition—What Is Unfair Competition.—Unfair competition is the passing off or attempting to pass off upon the public the goods or business of one man as that of the goods or business of another. Any conduct which tends to produce this effect is unfair competition, and the means employed are wholly immaterial.

2. Competition—What Is Unfair Competition.—Where for a long term of years a retail business is conducted at the same place in a city, under the same firm or corporate name, it is unfair competition for other persons to organize a corporation and adopt a part of the corporate name of the older corporation and operate a similar business under such corporate name two blocks from the older business.

3. Competition—What Is Unfair Competition.—Even though the incorporators of a new corporation adopt the name used in good faith and without purpose to injure the older concern or to confuse or mislead the public, it is still unfair competition if it tends to produce such result.

4. Landlord and Tenant—Lease—Contracts.—It would be inequitable to cancel a lease obtained by the newer corporation upon the place where it operates its business because, as alleged by the older corporation, the lessor to the newer corporation had violated his contract with it.

A. C. VAN WINKLE, GIBSON & CRAWFORD and T. M. GILMORE, JR., for appellant, Starks Company.

JOHN BRYCE BASKIN and HUMPHREY, MIDDLETON & HUMPHREY for appellee and appellant, Crutcher & Starks.

HELM BRUCE and BRUCE & BULLITT for Starks Realty Company and John P. Starks.

OPINION OF THE COURT BY JUDGE TURNER—Affirming on each appeal and the cross appeals.

In 1886 D. C. Crutcher and John P. Starks, under the firm name of Crutcher & Starks, began business as retail clothing merchants at the northeast corner of Fourth and Jefferson streets in Louisville, at which place there has ever since been conducted the same business under the same style, with the exception of about one year while that building was being reconstructed. Some years later I. F. Starks, a brother of John P. Starks, became interested in the firm, but withdrew from it in about 1891, for a period of about two years, and was again admitted as a member thereof in 1893.

Crutcher never, in fact, lived in Louisville during all the period he was interested in this firm, and the active management thereof was almost wholly in the hands of the Starks. In 1895 Crutcher disposed of his interest in the firm to the Starks, and in 1901 the business was incorporated under the corporate name of Crutcher & Starks, and so continued to be operated, chiefly under the management and control of the Starks, until March 25th, 1911.

The capital stock of the corporation consisted of 2,000 shares of the par value of $100 each, of which shares, on March 25th, 1911, John P. Starks and I. F. Starks owned 1,500, and G. R. Burton, John McGinn, and M. S. Moise the remaining 500.

On that day the parties entered into a written contract, under the terms of which John P. and I. F. Starks sold their 1,500 shares of stock in the corporation of Crutcher & Starks to Burton, McGinn, and Moise for the sum of $350,000.00, the sale to become operative on August 31st, 1911. On that day the sale was consummated as contemplated in the contract and the two Starks ceased to be interested in the corporation of Crutcher & Starks, and the other three gentlemen became the sole owners of the capital stock of that corporation.

In the contract of March 25th, 1911, among other things, it was provided:

"The parties of the first part (the Starks) hereby further agree that neither of them will, on his own account or as a member of a firm or as a stockholder in a corporation, engage, in the City of Louisville, in a similar line of business, or promote or encourage a similar

business, to that now conducted by Crutcher & Starks, for a period of ten years from the date that said transfer of stock and leaseholds shall become effective, but in case either of the parties of the first part shall become the owner of improved property in the City of Louisville. this clause of this agreement shall not be construed as prohibiting him from renting his said property, or space therein, to a third party who may be engaged in such business. And said John P. Starks, who is the owner of certain property at Fourth and Walnut Streets, in said city, binds himself in the event of his erecting, or in the event a firm or corporation in which he may become interested erects a building on said property, that if the parties of the second part herein shall desire to lease or rent any part of said building for the purpose of conducting the business of Crutcher & Starks, preference will be given to them at the same price at which it could be rented to others in a similar line of business.''

Thereafter, as seems to have been contemplated in the contract, John P. Starks erected on a lot owned by him on the northeast corner of Fourth and Walnut streets in Louisville, just two blocks south of the corner so long occupied by Crutcher and Starks, a large office building, the ground floor of which was intended for the occupancy of retail stores. This building was called the Starks Building. About the time of the completion of this building in November, 1913, W. H. Rapier, W. Reid Embry, and John S. Rodes organized a corporation, which was first styled the ''Starks Clothing Company,'' but the title was afterwards changed to the ''Starks Company.'' Besides the incorporators the other stockholders therein were Clifton Rodes, Mrs. Bettie F. Rodes, and T. M. Gilmore, Jr.; Mrs. Rodes being a sister of John P. Starks, and the other two Rodes his nephews, and Embry his nephew by marriage.

The Starks Realty Company is a ·corporation controlled by John P. Starks, organized for the purpose of leasing the Starks building, and that corporation entered into a lease for a term of eight years with the Starks Company for a part of the ground floor of the Starks building at Fourth and Walnut streets, where, in March, 1914, the Starks Company opened up a retail business of the same kind and nature as that which had been conducted by Crutcher & Starks, two blocks away, for this long period.

This is an equitable action by Crutcher & Starks and its present stockholders against John P. Starks, Starks Realty Company, Starks Company and the incorporators of the last named company, wherein an injunction is sought against Starks Company restraining it from the use of the word "Starks" in its corporate name, and also seeking a cancellation of the lease from Starks Realty Company to Starks Company.

The chancellor below perpetually enjoined Starks Company and its incorporators from the use of the name "Starks" in its corporate name, and from the use of the word "Starks" in any way connected with the business they were conducting further than to show, if conducted under a title without "Starks" in it, that it was conducted in the Starks building; he further declined to grant any relief as against John P. Starks and the Starks Realty Company, and dismissed the action as to them without prejudice to an action at law, and declined to cancel the lease between Starks Realty Company and Starks Company.

From that judgment Starks Company appeals because it is denied the right of the use of the word "Starks" in its corporate name; Crutcher & Starks appeal because of the court's refusal to cancel the lease between Starks Realty Company and Starks Company; and John P. Starks and Starks Realty Company appeal because the judgment as to them is not dismissed absolutely, instead of only without prejudice to an action at law.

While the pleadings clearly made the issue as to whether there had been a conspiracy between John P. Starks and Starks Company and its incorporators, to violate the contract with Crutcher & Starks (it being alleged that each of the defendants was fully aware of its provisions), yet the chancellor, in his opinion, granted the injunction against Starks Company and its incorporators solely upon the ground that they were engaged in unfair competition by the use of the name "Starks." We also will ignore the contract relations between the parties, as we have concluded that the injunction was properly granted upon the ground of unfair competition.

The evidence shows that at the time Starks Company opened its business under that name, Crutcher & Starks, either as a firm or a corporation of the same name, had been engaged in a similar business in the City of Louis-

ville for about 28 years, only two blocks from the place where Starks Company proposed to operate its similar business; that while the firm or corporation name had been Crutcher & Starks, the Starks brothers had been the active managers and operators of the business, and had, by their good business methods and foresight, built up the business until it was highly profitable, and that in this way the name "Starks" had been for that long time associated with the business; that Crutcher had never, in fact, lived in Louisville, while both of the Starks had, and, as stated, during all that time had taken the active management and control of the business, and in this way the name of "Starks" became and was much more intimately connected with the business so conducted than the name of "Crutcher." With this long course of business at the same place, conducted under the same name, built up through up-to-date and efficient business methods, the business had a value by reason of its reputation and name far in excess of the mere value of the stock of goods on hand. This is unmistakably evidenced by the fact that Burton, McGinn and Moise paid the Starks for their stock in the company $125,000 in excess of the value of the goods on hand. Under these conditions it cannot be doubted that where another party, none of whom are named "Starks," organized a company called "Starks Company," and opened a business, two blocks away on the same street, of the same character, that it is unfair competition, or an unfair effort to appropriate and get the benefit of the established name of "Starks" in the clothing business in that city.

Unfair competition has been defined by this court in the case of Newport Sand Bank Co. v. Monarch Sand Mining Co., 144 Ky., 7, as follows:

"Unfair competition may be defined as passing off, or attempting to pass off, upon the public the goods or business of one man as being the goods or business of another. Any conduct tending to produce this effect constitutes unfair competition and may be enjoined. The means employed are wholly immaterial."

The evidence in this case shows that at least in several instances the use of the name "Starks" by the Starks Company in its advertisements and in its name as printed upon its place of business, had deceived and confused several persons. The evidence is that some of them thought that "Crutcher & Starks" had moved their

place of business, or that "Crutcher & Starks" had opened up a branch store, or that the "Starks" had severed their connection with "Crutcher & Starks" and had opened up a business of their own. Under the express rule laid down in the Sand Bank case, above quoted, it is not necessary to show deceit or confusion, or that anybody had actually been misled; it is sufficient if the similarity in name is such as that it will likely produce that result.

But it is the contention of Starks Company and its incorporators that the name "Starks" in their corporate name was used for the reason that they were going to occupy the "Starks building," which was a new building at a prominent location, and in that way the location of the new concern would be fixed in the public mind and associated with this handsome new structure. If it be assumed that these gentlemen appropriated the name "Starks" solely with this view, and not with the purpose of gaining unfair advantage by the use of the name "Starks," and conceding for the sake of the argument that their intentions were above suspicion in this regard, still can it be contended that merely because they were in good faith, that they might with impunity appropriate the name "Starks" in the establishment of a new business when that same name had been associated for a long term of years with a similar business located nearby? Would not it be unfair competition and have the same effect upon "Crutcher & Starks" and the public, whatever their motives may have been?

The chancellor very properly held, as we think, that the cancellation of the lease by the Starks Realty Company to the Starks Company would be inequitable and work an unnecessary hardship upon these young men starting in business. They were within their lawful rights in going into the business at the place they did, and the corporation had a right to lease the property it did; the only thing they did wrong was to attempt to appropriate the name "Starks."

The correspondence between John P. Starks and Crutcher & Starks is convincing that John P. Starks gave to that corporation every fair opportunity to avail itself of its right, under its contract to lease space in the proposed new Starks building.

The chancellor based his injunction against Starks Company wholly upon the fact that the use of the name "Starks" constituted unfair competition and did not

pass upon the question whether or not John P. Starks had violated his contract with Crutcher & Starks, or whether there had been a conspiracy between him and the other defendants to violate the contract, and for that reason he properly dismissed the action as to John P. Starks and Starks Realty Company without prejudice to an action at law.

The judgment of the chancellor did substantial justice between the parties, and is in all respects affirmed.