## Mayfield Milling Company v. Covington Brothers & Company.

(Decided December 18, 1925.)

### Appeal from Graves Circuit Court.

1. Trademarks and Trade Names and Unfair Competition—Evidence Held to Show that Defendant's Flour, Named Trenton Cream, did Not Unfairly Compete with Plaintiff's Jersey Cream.—Evidence held to show that advertisement on defendant's flour, known as "Trenton Cream," was not so shaped, colored or phrased as to deceive purchasing public into believing it to be flour of plaintiff known as "Jersey Cream."

2. Trademarks and Trade Names and Unfair Competition—Purpose to Pass One's Product as that of Another Not Necessary to Constitute Unfair Competition.—To constitute unfair competition, it is not necessary that there be a purpose to pass one's product as that of another; it being sufficient that because of insignia or similarity of product purchasers believe it to be the product of another.

3. Trademarks and Trade Names and Unfair Competition—Actual Deception of any Purchaser Held Not Necessary to Obtain Relief from Unfair Competition.—In action to recover damages for unfair competition, it is not necessary that plaintiff show that any purchaser has actually been deceived by insignia; it being sufficient if similarity will probably bring about such result.

4. Trademarks and Trade Names and Unfair Competition—Tendency and Probability of Deception Necessary for Unfair Competition.—To sustain a charge of unfair competition, it must appear that insignia or symbol used has a tendency to and probably will deceive some part of the public into believing when they purchase one man's product, that they are purchasing that of another.

J. E. WARREN for appellant.

STANFIELD & STANFIELD for appellees.

OPINION OF THE COURT BY TURNER, COMMISSIONER—Affirming.

About thirty-five or more years ago, the firm of Mayes, Reeves & Company erected in Mayfield roller

mills and manufactured and sold flour. According to the usual custom, they made two or three grades of flour, and one of these was known by the trade name of "Jersey Cream," and in the sale and distribution of that flour they adopted as a trade insignia or device on the package containing it the picture of a Jersey cow standing upon a green sward, together with the name of the firm and other distinguishing devices. The milling property, together with its trade names and good will, was thereafter sold to two or three succeeding firms, and finally in about 1920 the same, together with the trade names and good will, became the property of appellant, a corporation.

Each of the firms and the corporation marketed in several counties in western Kentucky, and in two or more counties in Tennessee, the flour known as "Jersey Cream," and continued to market and distribute the same in packages containing the same insignia or device, with possibly a slight variation after appellant began to operate the roller mills. A large trade in this "Jersey Cream" flour had thus been built up in that territory.

Appellee is likewise a corporation which operates three large grocery stores in western Kentucky, one at Paducah, one at Mayfield and another at Murray. It does a jobbing trade, and in the spring of 1924, through an arrangement with the Trenton Milling Company, of Trenton, Illinois, it began to handle several grades of flour manufactured by the Trenton company. Among other brands made and marketed by the Trenton company was one known as "Trenton Cream," and when appellee began the distribution of that brand in the territory where appellant's brand had previously been marketed, this action was instituted by appellant against the grocery company charging it with unfair competition and asking for an accounting.

The allegations of the original petition are, in substance, that the "Jersey Cream" was one of appellant's leading products, and had been during the period named a standard grade of patent flour, and had a well established and distinguishing trade mark or name, "Jersey Cream," and those words were used in marketing the same in connection with the picture of a Jersey cow, beneath which picture was a picture of green grass, and that those words and pictures taken together under the arrangement so adopted and used had a well defined and distinctive meaning to users of patent flour in the terri-

tory designated, and that plaintiff and its predecessors, during the time mentioned, had expended large sums of money in advertising the product under that trade name, and had by such advertising and correct business methods built up a good reputation for that brand of flour so sold and marketed by it. It is then alleged that defendant, well knowing the reputation of such brand and the names and location of plaintiff's various customers therefor, with the design to injure plaintiff in its good will and to deprive it of profits thereon, had begun selling to plaintiff's customers, and others in that territory, flour made in the state of Illinois known and labeled as "Trenton Cream," which latter words are likewise accompanied by the picture of a Jersey cow standing upon a plot of green grass, and so similarly arranged in words and devices as to enable it to make sales in that territory which it could not otherwise have made, and to receive orders which it would not otherwise have received; and that defendant had used means and devices, and had through its agents and representatives made statements and representations calculated to deceive the public, and cause the belief by members of the public that when they purchased defendant's flour they were purchasing the flour manufactured and sold by plaintiff.

The answer in the first paragraph put in issue the material allegations of the petition, and in a second paragraph affirmatively alleges that defendant had been engaged in the wholesale grocery business for at least forty years, and at all times during that period had been engaged in marketing flour manufactured by various millers throughout the United States, and that in the usual course of its business it had begun selling in the territory named flour manufactured by the Trenton Milling Company located at Trenton, Illinois, in the same size sacks as those set forth in the plaintiff's petition. It then alleges that the Trenton Milling Company is an old established manufacturer of "Trenton Cream" flour, and has been engaged in the manufacture of "Trenton Cream" flour for a period of twenty-nine years continuously, and during such period has continuously, and without interruption, sold the same under the name of "Trenton Cream" in the sacks so referred to. It then affirmatively alleges that there is no similarity whatever between the actual words "Jersey Cream" and "Trenton Cream," and that there is no similarity in the general design of the two labels, except that each label or sack

embodies the picture of a cow in yellow, and that the use of the picture of the cow in yellow is quite common among the manufacturers of flour; it says that the trade name and label used on the "Trenton Cream" flour is so distinct and dissimilar from that used on the flour designated as "Jersey Cream" that it could not and does not mislead the public as to the identity of the flour being sold and that its sales of "Trenton Cream" has been upon its merits, and in no instance has it made any statement or representation intended or calculated to deceive the public, or to lead any member of the public to believe that in purchasing "Trenton Cream" they were purchasing "Jersey Cream."

A reply put the affirmative allegations of the answer in issue, and upon a submission, after the taking of evidence, the plaintiff's petition was dismissed, from which this appeal is prosecuted.

There was a failure of proof by the plaintiff that defendant through its agents and traveling men, or otherwise, had made statements and representations calculated to deceive the public or purchasers of flour into believing that the "Trenton Cream" and the "Jersey Cream" were one and the same, or that in the purchase of "Trenton Cream" they were buying "Jersey Cream." So that the only question presented on this appeal is whether the two containers or sacks in which the two brands were sold were so similar in their insignia, symbols, general characteristics and arrangement as to constitute unfair competition in making the public or any considerable part of it believe that when a purchase of "Trenton Cream" was made it was a purchase of "Jersey Cream." We have before us the originals of two exhibits filed in the lower court, and by agreement sent to this court, each being a sack or container with the insignia, symbols and arrangements used by each company in marketing its flour, and each designed to hold 24 pounds of flour. The figures and letters on appellant's sack are "24 lbs." in large blue letters at the top and above the printing showing the corporate name; the figures and letters on appellee's sack are "24 lbs. Flour" in much smaller and very different shaped figures and letters printed in bright red, and below the large red letters "Trenton Roller Mills." Then on appellant's sack next below is a large circle in blue with scallops around the outer circle and within that large circle is a smaller plain circle in blue; between the two circles and around the top of the inner

circle appears in fair sized green letters in a semicircular form the words "Mayfield Milling Company," and at the bottom in the same space "Mayfield, Ky." Within the smaller circle appears in yellow the picture of a cow standing on a plot of green grass, and over the cow, and within the inner circle, is the word "Jersey," and under the cow, and below the picture of the green grass, the word "Cream," both of these words being in good sized letters of blue. Then below the two circles in blue are the words "High Grade Patent Flour," the latter two words in much larger type than the first two, and then below that near the bottom of the sack in smaller blue letters are the words "Bleached Jersey Cream Flour." The general appearance of appellant's sack is an attractive advertisement in blue with a small picture of a cow in yellow upon a greed sward, as indicated, and with the corporate name and address in green letters.

On the other hand, on appellee's sack toward the top in large red letters are the words "Trenton Roller Mills," the words "Roller Mills" being in much larger type than the word "Trenton," and differently shaped. Just below those words, and above the picture of the cow, are the words "24 lbs. Flour" above described in much smaller red letters. Then below that is a large picture of a cow in yellow standing on a green sward, both yellow and green being paler in color than that on appellant's sack; and not only is the picture of a cow in no circle whatever, but the picture is from 2½ to 3 times as large as the picture of the cow on appellant's sack. Then below that in large red letters are the words "Trenton Cream" and below that in much smaller blue letters are the words "Trenton Milling Company, Trenton, Ill.," and below that in still smaller red letters are the words "Bleached Trenton Cream." So that the general appearance of appellee's sack as so decorated is an advertisement with the dominant color red, and with a picture of a cow so much larger, and so differently arranged as to show very little similarity between the two. Not only is the coloring in the one dominated by a bright red while the general color scheme of the other is bright blue, but the shape of the letters is very different, the size of the cow on the one is very much larger than the other, even though the general coloring is the same, that there can be said to be no striking similarity in appearance. The wording, it is true, on one is somewhat similar to that on

the other, but this necessarily grows out of the nature of the product each was advertising.

The fundamental element in unfair competition is the element of deception; either one must directly represent his goods as that of another, or he must deceive the purchasing public of that article by placing it upon the market in such form and dressed with such symbols or insignia as to deceive them into believing that it is the product of another. Without either direct deception or indirect deception practiced through trade methods, there can be no unfair competition.

In this case clearly there was no purpose upon the part of the manufacturer of the Illinois flour to pass its product off for that of appellant, for it appears that although that manufacturer had been producing this brand of flour for twenty-nine years, presumably with the same advertising insignia on its sacks, it had never been sold in appellant's territory until the spring of 1924. But it is not essential that there should have been such purpose either by the manufacturer or the jobber; for if that flour was placed upon the market in such packages as to result in confusion or mistake by the purchasers, and they were, because of the insignia or symbols or their similarity, caused to believe that it was appellant's flour, the result would be the same to it whether or not it was designedly done. It is not even necessary that the plaintiff should actually show that any purchaser had been deceived by such insignia; but if it bore such similarity to that of the other as to probably bring about such a result, still it is unfair competition and the relief may be granted. 38 Cyc., page 773, et seq.; Rains & Sons v. White, Haucke & Co., 107 Ky. 114; Newport Sand Bank Co. v. Monarch Sand Mining Co., 144 Ky. 7; Crutcher & Starks v. Starks, 161 Ky. 690; Metcalfe v. Brand, 86 Ky. 331; Avery & Sons v. Meikle & Co., 81 Ky. 113.

In the Kentucky cases the articles dealt with, either in trade mark cases or cases of unfair competition, were so essentially different as to furnish no illustration of the rules applicable here. For instance, in the Avery case the subject matter was the manufacture of plows with certain figures and signs placed upon the metal in them by the process of manufacture, while here we are dealing only with the question of similarity between the advertising matter printed upon the containers used by the party.

Keeping in mind the rule that there can be no unfair competition by the use of insignia or symbol of trade, unless the insignia or symbol has a tendency to and probably will deceive at least some part of the public into believing when they purchase one man's product they are purchasing that of another, we are impelled to agree with the chancellor below after a careful inspection and study of the two exhibits. That inspection convinces us that in view of the wholly dissimilar appearance of the two sacks, together with the coloring of the printed matter, and the arrangement and size of the dominant device—the cow—no ordinarily intelligent person could possibly purchase appellee's product thinking he was purchasing that of appellant. The difference in the coloring, the size of the letters and their arrangement, the size of the two cows, the fact that the smaller cow appears within a circle, while the larger one does not, is wholly inconsistent with any conception that an ordinarily sensible person could be deceived by any so-called similarity in the two insignia or trade advertisements.

As said in Armour & Company v. Louisville Provision Co., 283 Fed. 42, "To sustain a charge of unfair competition it must at least appear that defendant's conduct had a tendency or was calculated to palm off its goods as those of plaintiff."

Judgment affirmed.