**GROCERS BAKING CO. v. SIGLER.**

No. 9133.

Circuit Court of Appeals, Sixth Circuit.

Dec. 5, 1942.

A. C. Van Winkle, of Louisville, Ky. (A. D. Kirk and Cary, Miller & Kirk, all of Owensboro, Ky., and Van Winkle & Becker, of Louisville, Ky., on the brief), for appellant.

Thos. E. Sandidge, of Owensboro, Ky. (Dewitt Chappell, of Evansville, Ind., on the brief), for appellee.

Before ALLEN, HAMILTON and MARTIN, Circuit Judges.

ALLEN, Circuit Judge.

The District Court dismissed an action for injunction instituted by appellant on the ground of infringement of trade-mark and unfair competition. Appellant, a baking company which manufactures and sells bread and similar products and is the owner of a registered trade-mark containing the words "Honey-Krust," charged that appellee had sold in Henderson County, Kentucky, bread in a package with a label containing the words "Hon-E-Krust," which constituted an infringement of its trade-mark. Appellant also charged that the label of the bread sold by appellee constituted a colorable imitation of appellant's trade-mark, which enabled the appellee unfairly to compete with appellant and to palm off on the public bread sold by the appellee as the product of the appellant.

Appellee is an individual distributor who since 1937 has bought bread manufactured and packaged by the Hi-Class Baking Company, Inc., in Evansville, Indiana, transported it in his own truck to Henderson, Kentucky, and distributed it in the original packages at private houses, serving no grocery stores. The principal features of the wrapper used by appellant for its bread are an oval-shaped figure about five inches in length having two symmetrical indentations at each end and the words "Honey-Krust" printed inside the figure in large capital letters. The wrapper on the bread sold by appellee has the words "Hon-E-Krust" printed within a figure of substantially identical shape and proportions and of substantially the same size as appellant's. The "Hon-E-Krust" wrapper has been used by the Hi-Class Baking Company since about 1932. Appellant first sold its "Honey-Krust" bread to grocers in Henderson in 1939. Learning of appellee's bread-route, appellant notified appellee that he

was infringing appellant's trade-mark by using the "Hon-E-Krust" package. Upon his refusal to discontinue selling, this suit was instituted. The defense of the suit is conducted and financed by the Hi-Class Baking Company.

■ We think the District Court correctly decided that the trade-mark was not infringed. Appellant's design contains the words "Honey-Krust," but in each of its applications for registration of trade-mark, filed in 1922, 1929 and 1935 respectively, appellant specifically waived claim to the exclusive use of the words "Honey-Krust" apart from the design as shown, although waiving no common-law right to the use of the words, and making an express reservation to that effect in the 1929 and 1935 applications. The oval figure was adopted as an essential part of appellant's trade-mark in its application for registration made in 1929, and was also contained in a similar application made in 1935. Appellant's waiver presumably recognizes the fact that the name "Honey-Krust" is a descriptive term, and hence is not a proper subject for registration as a trade-mark. The term has been used as a trade name for bread in other parts of the country for a number of years. The words spelled exactly as appellant spells them have been used by the Southern Baking Company of Bluefield, West Virginia. A company at Goshen, Indiana, sells bread under the name "Honey Crust," and another company at Huntington, Indiana, as does appellee, uses the words "Hon-E-Krust." Its waivers precluded the appellant from claiming any exclusive right to the name under its trade-mark, and we therefore conclude that the District Court rightly dismissed the action for infringement. Shaler Co. v. Rite-Way Products, Inc., 6 Cir., 107 F.2d 82, 84.

■ The question of unfair competition is much closer. A state of facts may be sufficient to show unfair competition even though insufficient to support a claim of technical trade-mark infringement. Shaler Co. v. Rite-Way Products, Inc., supra; Socony-Vacuum Oil Co., Inc., v. Rosen, 6 Cir., 108 F.2d 632. Cf. Chesebrough Mfg. Co. v. Old Gold Chemical Co., Inc., 6 Cir., 70 F.2d 383. The record shows without contradiction that the words "Honey-Krust" have acquired a secondary meaning throughout the State of Kentucky and have come to signify a product of appellant both to the consuming public and to dealers gen-

erally. This was testified to by a qualified disinterested witness, we well as by several employees of the appellant. The record establishes that appellant is one of the largest distributors of bread in Kentucky. In the years from 1932 to 1938, average gross sales of "Honey-Krust" products were in excess of $1,750,000 a year. The words "Honey-Krust" were adopted for its products prior to 1916. While the original plant was set up in Louisville, other manufacturing plants were established or acquired successively in Lexington, Kentucky, Johnson City, Tennessee, New Albany and Bedford, Indiana, and Bowling Green, Kentucky, all prior to 1937. The Bowling Green plant was completed in 1936. In the spring of 1937 an agency was established at Madisonville as an outlet for that plant, and routes were opened from Madisonville into Webster and Union Counties, which are adjacent to Henderson County. One route ran very near the southern boundary of Henderson County. The plant in Owensboro, which is in the county to the east of Henderson County, was built in 1938 and supplied routes in the direction of Henderson County. Whenever appellant entered a new town for the sale of its products, it advertised extensively in the surrounding territory by road signs, billboards, and other means. It was shown that appellant's product was available in the grocery stores of Owensboro continuously after 1924 and that advertising embodying the trade-name was posted on the roads between Owensboro and Henderson at the time such sales began, and on roads leading into Evansville from New Albany and Bedford as early as 1931. Advertising was carried in newspapers of general circulation and on regular radio programs. During the period from 1926 to 1938, inclusive, approximately three-quarters of a million dollars were expended in advertising "Honey-Krust." Plainly the use of the words "Honey-Krust" had been sufficiently long and exclusive in Kentucky so that they had acquired a secondary meaning throughout the state. Artiste Permanent Wave Co. v. Hulsman, 271 Ky. 695, 113 S.W.2d 55.

■ Examination of the exhibits reveals that the Hi-Class Baking Company on its packages has adopted not only the name "Hon-E-Krust," which is pronounced exactly the same as the appellant's name, but the same unusual oval figure used by appellant in which the name is set. The District Court states that the designs are

totally dissimilar; but as to the name and the figure surrounding the name, the features which stand out in high light on the package, the two wrappers are substantially identical. The District Court calls the figure in each case a potato-shaped figure, and ignores this feature in his finding that the designs are entirely dissimilar. What the appellant uses here is a trade name set off by a peculiar mark or symbol. As pointed out in N. K. Fairbank Co. v. Luckel, King & Cake Soap Co., 9 Cir., 102 F. 327, a trade name differs from a trademark in that it appeals to the ear more than to the eye. Here the two names are idem sonans. The identity of the oval lends additional emphasis to the identity of the sound. As pointed out in the above case, the character of the label or package is no answer to the charge that the names are so similar as to deceive purchasers.

■■ The court found that there is no evidence that any person was deceived or even confused by the alleged similarity of the designs. Bearing in mind the rule that the finding of the District Court upon a question of fact cannot be set aside except for manifest error (James Heddon's Sons v. Millsite Steel & Wire Works, Inc., 6 Cir., 128 F.2d 6, 13), we think that this record presents uncontradicted evidence of confusion. Appellant's complaint charged use of a colorable imitation of its trademark so as to confuse and deceive the public. In the answer and counter-claim the appellee charged that the use of appellant's name constituted an infringement of the trade-mark "Hon-E-Krust," and tends to confuse and deceive his customers. This constitutes a virtual admission of confusion. The appellee testified that the competition of appellant had hurt him; that his business had fallen off considerably since appellant had brought in "Honey-Krust" from Owensboro; that a woman could go to a grocery store and get "Honey-Krust" bread without waiting for appellee if he was late, and that the reason she got the bread was that her demand was for honey-crust bread. He added, "When I was the only one having 'Hon-E-Krust' it made a difference." Appellee himself conceded that his trade was cut by confusion between the labels.

■ Moreover, under Kentucky law which is applicable here, all that appellant had to show was probable confusion.

■ A suit to enjoin unfair competition and common law trade-mark infringement is governed by local law. Pecheur Lozenge Co., Inc., v. National Candy Co., Inc., 315 U.S. 666, 62 S.Ct. 853, 86 L.Ed. 1103. Cf. Fashion Guild v. Trade Commission, 312 U.S. 457, 468, 61 S.Ct. 703, 85 L.Ed. 949; James Heddon's Sons v. Millsite Steel & Wire Works, Inc., supra, 128 F.2d 13.

■ Under Kentucky law a trade name does not have to be identical with another in order to justify a court in enjoining its use. It is sufficient if it is so similar to the earlier adopted trade-mark as to make it likely that unsuspecting persons would be led to believe that it was the same. Newport Sand Bank Co. v. Monarch Sand Mining Co., 144 Ky. 7, 137 S.W. 784, 34 L.R.A.,N.S., 1040. It is not necessary to show actual confusion by similarity in names. It is sufficient that the name selected is so similar to that used by its competitor as likely to produce deception. Mayfield Milling Co. v. Covington Bros. & Co., 212 Ky. 262, 278 S.W. 562. To constitute unfair competition it is not necessary that there be a purpose to pass off one's product as that of another, it being sufficient that because of insignia or similarity of product purchasers believe it to be the product of another, or that the insignia or symbol has a tendency to, and probably will, deceive some part of the public. This is the established law of Kentucky. Rains & Sons v. White, Haucke & Co., 107 Ky. 114, 52 S.W. 970; Avery & Sons v. Meikle & Co., 81 Ky. 73; Crutcher & Starks v. Starks, 161 Ky. 690, 171 S.W. 433; Metcalfe v. Brand, 86 Ky. 331, 5 S.W. 773, 9 Am.St.Rep. 282; E. H. Taylor, Jr., & Sons Co. v. Taylor, 124 Ky. 173, 85 S.W. 1085.

In addition, we think that the record shows bad faith on the part of the Hi-Class Baking Company. It does not seem possible that a baking company just across the Ohio River in Indiana would be unaware of the billboards, street signs, road signs, advertisements in newspapers and periodicals, and programs over the radio which were used by appellant so extensively in Southern Indiana in the vicinity of Evansville, as well as in Kentucky. However, assuming that the Hi-Class Baking Company would not be so alert as to follow all advertisements of goods similar to its own, put out in a state immediately adjacent and in territory in its own state very near to that of its customers, it is difficult to see how the use of the oval-shaped figure could have come about by chance. A circle, triangle, square or hexagon perhaps could have been adopted without a realization

that it belonged to a competitor; but this use of such a peculiar figure raises a reasonable inference that the Hi-Class Baking Company intended to make use of the reputation of the appellant in the distribution of its bread products. Moreover, within six weeks after the Hi-Class Baking Company began labeling its bread "Hon-E-Krust," it was notified by salesmen that the trade name was similar to that used by appellant, and made no investigation either as to the territory covered by appellant or as to any other matter in connection with the appellant's prior use.

■■■ Appellee contends that since he sold bread with the "Hon-E-Krust" design on the package prior to the time that appellant made anything but sporadic sales in Henderson, an injunction should not issue. However, the record clearly shows that the appellant had built up a state-wide business in "Honey-Krust" bread products long prior to appellee's use of the particular label. Good will may exist in a given territory where no business is done by the possessor of the good will. White Tower System, Inc., v. White Castle System, 6 Cir., 90 F.2d 67; Buckspan v. Hudson's Bay Co., 5 Cir., 22 F.2d 721. If the good will exists, an injury thereto gives rise to a right of injunction. Henderson was within the normal expansion of appellant's business. It was ringed around with appellant's trade routes running out from its various factories in Western Kentucky and in Southern Indiana. The statement of its extensive advertising on billboards and road signs to within eighteen miles of Henderson, and over the radio in Western Kentucky demonstrates that good will existed there on behalf of the appellant. The state has been held to be an appropriate division of trade territory. Hemmeter Cigar Co. v. Congress Cigar Co., 6 Cir., 118 F.2d 64. Cf. Western Oil Refining Co. v. Jones, 6 Cir., 27 F.2d 205. Since positive and uncontradicted testimony establishes here the existence of a state-wide good will, the circumstance that appellee established his bread route a short while before appellant definitely entered Henderson is no defense to the application for injunction.

■■■ There remains to be considered the question whether the appellee, who distributes the bread, is in any better position than the manufacturer whose bread he distributed. Since the sale of the packaged article constituted unfair competition with appellant's existing trade-mark, the distrib-utor is a joint tort feasor with the manufacturer, for the owner of a trade-mark or trade name is entitled to protection against innocent as well as malicious infringers. Crutcher & Starks v. Starks, supra; Churchill Downs Distilling Co. v. Churchill Downs, Inc., 262 Ky. 567, 90 S.W.2d 1041; Cuervo v. Landauer, C.C.N.Y., 63 F. 1003. Appellee was fully informed of the rights of the appellant prior to the institution of this suit. No damages are asked, and only an injunction is prayed for. In order to protect appellant's established business, appellee must be enjoined from further sales of bread packaged with the trade name and peculiar mark of the appellant. Cf. Shredded Wheat Co. v. Kellogg Co., D.C.Conn., 26 F.2d 284; John B. Stetson Co. v. Stephen L. Stetson Co., 2 Cir., 85 F.2d 586.

The judgment is reversed and the case is remanded for further proceedings in accordance with this opinion.