## SAXLEHNER *v.* NIELSEN.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 33. Argued and submitted March 22, 23, 1900.—Decided October 15, 1900.

Defendant was prosecuted for selling bitter waters under the name of "Hunyadi Lajos." *Held*, That although the proof of laches on the part of plaintiff was not as complete as in the former case the same result must follow, and that the bill must be dismissed as to the word "Hunyadi" and sustained as to the infringement of the bottles and labels.

THIS was a bill of similar character to those involved in the prior cases, and was brought to enjoin the defendant from selling water under the name of "Hunyadi Lajos," or any other name in which the word "Hunyadi" occurs, as well as selling such water in bottles or under capsules or labels resembling those of the plaintiff upon her bottles of "Hunyadi Janos" water. The answer pleaded abandonment and laches. The Circuit Court made a similar decree to that in the Eisner and Mendelson suit, enjoining the infringement of plaintiff's red and blue label, requiring an accounting for damages, and denying relief against the use of the name "Hunyadi." The Circuit

Court of Appeals reversed this decree, and ordered the bill to be dismissed.

*Mr. Antonio Knauth* and *Mr. John G. Johnson* for petitioner. *Mr. Arthur von Briesen* was on their brief.

*Mr. Louis C. Raegener*, for respondent submitted on his brief.

MR. JUSTICE BROWN delivered the opinion of the court.

The evidence in this case is much less complete than that in the cases just decided, although its general tendency is much the same. Plaintiff proved the adoption of the name "Hunyadi" by certificate of the Municipal Council of Buda-Pesth, dated January 19, 1863, authorizing Saxlehner to give his spring the name of "Hunyadi Spring," and by other certificates of a similar character.

It was shown that Andreas Saxlehner had used uninterruptedly the trade-mark "Hunyadi Janos," ever since 1865; that in 1873 he had registered this trade-mark in Hungary, and that plaintiff had re-registered the same in 1890. It was admitted that, if the plaintiff had not been guilty of laches, acquiescence or abandonment, she would undoubtedly be entitled to the exclusive enjoyment of both name and label.

But the contract with the Apollinaris Company was also put in evidence, together with testimony showing that from 1886, when the Hunyadi Arpad water began to be imported, some fourteen different Hunyadi waters were put upon the American market without opposition on the part of Saxlehner or the Apollinaris Company, and that the name "Hunyadi" had become widely known in this country as applicable to Hungarian bitter waters. Of some of these waters the importations were as high as six or seven thousand cases a year. As stated in the former opinion, the use of the name "Hunyadi" had become generic in Hungary, and Saxlehner could not have been ignorant of this fact, or of the further fact that exportations of these waters were constantly being made to foreign countries. He

was, at least, put upon inquiry as to whether these waters were not being sold in America in competition with his own, and he should have either instructed the Apollinaris Company to prosecute the infringements, or instituted proceedings himself to vindicate his proprietary interest in the name. Under such circumstances we think it too late now to maintain an exclusive title on the part of the plaintiff to the name "Hunyadi," and that she has been guilty of laches which preclude her right to an injunction.

So far as the question of label is concerned, plaintiff's witnesses proved sales of the Hunyadi Janos water in this country since about 1870, first under a red and white label and afterwards under the red and blue label. Defendant's water does not come from the neighborhood of Buda-Pesth, but from a spring situated at Kocs, more than a hundred miles from that place, though the water is apparently of similar character. His label appears to have been designed originally by one Schmidthauer, in Hungary, where it was registered as a trademark in July, 1892, and introduced the same year into this country. The label is so obviously an imitation of the Saxlehner label that defendant makes no argument to the contrary, and the appearance of the two is so nearly alike that a casual purchaser would easily suppose he was purchasing the Hunyadi Janos water in buying that of the defendant. The record also shows that the trade-mark registered by Schmidthauer in July, 1892, as above stated, was canceled by the Gyor Chamber of Commerce and Industry on March 24, 1897. There seems to have been no excuse for the adoption of this label except the fact that so many dealers of bitter water in Hungary had seized upon Saxlehner's name and label that it was treated as public property. For the reasons stated in the former case, we think that defendant should be held accountable for this misappropriation.

*The decree of the Circuit Court of Appeals will therefore be reversed, and the case remanded to the Circuit Court for the Eastern District of New York with direction to reinstate its decree of July 18, 1898, and for further proceedings consonant with this opinion.*