### UNITED STATES ex rel. GIVENS v. WORK, Secretary of the Interior.

(Court of Appeals of District of Columbia. Submitted May 3, 1926. Decided June 1, 1926.)

No. 4442.

**I. Public lands** &#9901;&#8658;89(3).

Act March 3, 1887 (Comp. St. § 4895 et seq.), particularly section 5 (Comp. St. § 4899) enacted to protect equitable rights of bona fide purchasers of land granted railroads and forfeited by them, should be liberally construed.

**2. Equity** &#9901;&#8658;72(1).

Laches does not depend on mere lapse of time, but is principally question of inequity of permitting claim to be enforced, arising from changed conditions.

**3. Equity** &#9901;&#8658;70.

A person cannot make defense of laches available to himself by changing his position with notice of rights of person against whom defense is asserted.

**4. Public lands** &#9901;&#8658;89(3)—Purchaser from railroad of land granted by Congress and subsequently forfeited held guilty of laches, in precluding issuance of patent to assignee (Act March 3, 1887, § 5 [Comp. St. § 4899]; Executive Proclamation Dec. 20, 1892 [27 Stat. 1049]; Executive Order June 26, 1908; Act July 27, 1866 [14 Stat. 292]; Act July 6, 1886 [24 Stat. 123]).

Claimant, under Act March 3, 1887, § 5 (Comp. St. § 4899), of land included within timber and forest reserves under Executive Proclamation of December 20, 1892, and Executive Order of June 26, 1908, which originally had been granted railroad under Act July 27, 1866, and forfeited by Act July 6, 1886, who for more than 15 years after adjudication of his rights made no application for patent, *held* guilty of such laches as to warrant government's assumption that he had abandoned claim, and justified refusal to grant his assignee a patent.

Appeal from the Supreme Court of the District of Columbia.

Action by the United States, on the relation of Helen L. Givens, for a writ of mandamus to be directed against Hubert Work, Secretary of the Interior. Judgment for defendant, and relator appeals. Affirmed.

J. H. Covington and Spencer Gordon, both of Washington, D. C., for appellant.

D. V. Hunter, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

VAN ORSDEL, Associate Justice. Appellant, plaintiff below, filed a petition in the Supreme Court of the District of Columbia, seeking a writ of mandamus to compel the Secretary of the Interior to issue her a patent for certain lands located in the state of California.

It appears that the land in question was granted to the Atlantic & Pacific Railroad Company by the Act of July 27, 1866, 14 Stat. 292. It was also embraced within a grant to the Southern Pacific Railroad Company under the Act of March 3, 1871, 16 Stat. 573. Subsequently, by decree of court, it was excluded from the latter grant by reason of the prior grant. By the Act of Congress of July 6, 1886, 24 Stat. 123, the grant to the Atlantic & Pacific Railroad Company was forfeited for the failure of the railroad company to construct its road in compliance with the terms of the grant.

In 1882 one Daniel D. Brunk, a citizen of the United States, had settled on the land involved in this suit. In 1885 he contracted with the railroad company for the purchase of the land and made payments thereon. In 1886 Brunk assigned all his interest in and to his contract with the railroad company to one Milton D. Painter, and in 1887 this agreement was filed for record in the office of the recorder of Los Angeles county, the county in which the land is situated. The railroad company consented to this assignment in November, 1886.

The present action is founded upon rights alleged to have been embodied in the Act of March 3, 1887, 24 Stat. 556 (Comp. St. § 4895 et seq.), which was enacted for the protection of those who in good faith had purchased land from the railroad company. Section 5 of the act (Comp. St. § 4899) provides as follows: "That where any said company shall have sold to citizens of the United States, or to persons who have declared their intention to become such citizens, as a part of its grant, lands not conveyed to or for the use of such company, said lands being the numbered sections prescribed in the grant, and being coterminous with the constructed parts of said road, and where the lands so sold are for any reason excepted from the operation of the grant to said company, it shall be lawful for the bona fide purchaser thereof from said company to make payment to the United States for said lands at the ordinary government price for like lands, and thereupon patents shall issue therefor to the said bona fide purchaser, his heirs or assigns."

By an executive proclamation of December 20, 1892, 27 Stat. 1049, the land in question, still unsurveyed, was included within

the limits of the San Gabriel timber land reserve, and by executive order of June 26, 1908, it was included in the Angeles National Forest. The land was surveyed in 1911, and a plat thereof filed in the local land office at Los Angeles October 4, 1912.

It is not denied that Painter was directly within the provisions of the act of 1887. Indeed, his rights were adjudicated as such in United States v. Southern Pac. R. Co., 184 U. S. 49, 22 S. Ct. 285, 46 L. Ed. 425. Painter, however, took no steps to obtain a patent for the land between the date of the decree in 1902 and October 25, 1917, when he conveyed to the plaintiff, Helen L. Givens, all his right, title, and interest in the land, and his interest in Brunk's contract of purchase. Plaintiff, Givens, promptly filed her application to enter and purchase the land under section 5 of the act of 1887 aforesaid.

In 1901 or 1902, prior to the decree of the Supreme Court, a forest ranger took possession of a house on the land, which Brunk had constructed and resided in up to the time of his death, with a view of establishing a ranger station. Finding the house unsatisfactory, he tore it down and erected a cabin. In 1907 a new ranger station was erected on the land, which has been used since that time for the Forestry Service. Between the years 1907 and 1917, 30 permits were issued by the Forestry Service for the erection of cottages on the land. Each permit, however, contained the following provision: "This permit is issued subject to all existing valid claims."

It is alleged in the answer, and admitted by demurrer, that improvements amounting to $26,000 were made by these permittees on the land prior to plaintiff's application of November 2, 1917. It is not contended that these permits for the erection of small cottages conveyed any title or interest in the land. As consideration for the permits, a small rental in each instance is collected by the Agricultural Department, under whose direction and authority the permits were issued.

The primary question presented in this case is whether or not Painter was guilty of such laches as would render his conveyance to plaintiff voidable at the instance of the government. Defendant's answer to plaintiff's petition, which is admitted by the demurrer, alleges in substance that Painter up to 1916 owned property and resided in Los Angeles; that he had taken no steps toward exercising his right under section 5 of the act of 1887; that in 1916, through the efforts of one Harrison Ward, the land was identified; and that to exercise his right under the act, owing to unpaid taxes and other expenses, would require an outlay of some $300. Painter accordingly sold his right to Ward for $50, and Ward caused the deed to be executed and delivered to a relative, the plaintiff herein. It is further alleged and admitted that Ward had not seen the land since 1906, but bought it as a camp site for his mother, with whom plaintiff resided in Pasadena. The land is situated 30 miles from Los Angeles and 6 miles from Pasadena.

Painter was in every sense a bona fide purchaser under the act of 1887. His purchase from Brunk was prior to the act. The transaction, therefore, possessed none of the infirmities that might attach to subsequent purchasers, although it has been held by the Land Department, in Sethman v. Clise, 17 Land Dec. 307, and in United States v. Southern Pacific Railroad Co., 184 U. S. 49, 55, 22 S. Ct. 285, 288 (46 L. Ed. 425) that it can make no difference under the act "whether a transferee, otherwise entitled to purchase, bought the land before or after the day of the approval of the act, if it was originally purchased in good faith from any said company."

[1] The act of 1887 is a remedial one, and should be so construed as to completely carry out the beneficial end sought to be accomplished and to prevent a failure of the remedy. It should consequently, under the general rule of interpretation be liberally construed. The scope of the law is comprehensively stated in a letter of Attorney General Garland to the Secretary of the Interior, 6 Land Dec. 275, quoted with approval in United States v. Southern Pacific Railroad Co., supra, as follows: "The whole scope of the law from the second to the sixth section, inclusive, is remedial. Its intent is to relieve from loss settlers and bona fide purchasers who, through the erroneous or wrongful disposition of the lands in the grants, by the officers of the government, or by the railroads, have lost their rights or acquired equities. * * * The fifth section expressly refers to such lands as had been sold, which had not been conveyed 'to or for the use of such companies.' It is not required that the sale by the railroad companies shall have been made on its part in good faith, but only that the purchaser shall have bought in good faith. That it was sold under a claim of grant to another in good faith is the ground of his equity."

Plaintiff's right to recover, we think, depends upon the right of Painter, had he not conveyed his rights, but had personally made application for patent. Plaintiff can claim no greater rights than Painter, nor do we think that she is in position to assert the claim of a purchaser for value with rights which cut off equities accruing to defendant through the laches of Painter. She simply acquired whatever rights Painter had. To this extent there is no lack of bona fides on the part of plaintiff. She purchased subject to whatever infirmities might attach from Painter's delay for 15 years to assert his claim after his rights had been adjudicated.

[2, 3] Laches, however, does not depend upon mere lapse of time. As was stated, after a review of many cases, in Galliher v. Cadwell, 145 U. S. 368, 373, 12 S. Ct. 873, 875, (36 L. Ed. 738): "But it is unnecessary to multiply cases. They all proceed upon the theory that laches is not, like limitation, a mere matter of time, but principally a question of the inequity of permitting the claim to be enforced—an inequity founded upon some change in the condition or relations of the property or the parties." Nor can a person avail himself of the defense of laches by changing his position in order to create apparent equities with notice of the rights of the person against whom delay is asserted. The government had constructive notice of the record evidence of Painter's claim.

On the other hand, each case depends upon its particular facts, and the sole question to be determined here is whether or not the government has so changed its position in respect of the lands in question, with notice of Painter's asserted right, as to justify its action upon the assumption of Painter's abandonment. Painter's conveyance from Brunk had been for 30 years a matter of public record in the county wherein the lands were located. While there was no way of definitely fixing the exact limits of the land until it was surveyed in 1912, this did not prevent Painter from promptly filing his application for purchase and patent following the adjudication of 1902. The government, however, proceeded in a manner indicating its disregard of Painter's rights. Subsequent to the act of 1887, and prior to the adjudication of 1902, forest rangers had taken possession of the land, occupying the house thereon constructed and previously occupied by Brunk. Later they destroyed the building and established thereon a ranger station. For five years prior to the completion of the survey, permits had been issued to persons to erect cabins on the land. Of course, it is not contended that these permittees have any equities that can be availed of in this case. The only importance to be attached to their occupation is in determining whether or not the change in conditions during the period of delay was such as to charge Painter, the adverse party, with notice and foreclose him or his assignee from now asserting adverse rights.

The rule as to changed conditions supporting the assumption of abandonment, and thus constituting laches, is well stated in the Galliher Case, where the plaintiff, Mrs. Galliher, was claiming a right to purchase lands in a suburb of Tacoma, Wash., under an act of Congress securing title to lands embraced within certain prior homestead entries. Her right to purchase was denied solely on the ground of delay in making her application. She resided within 40 miles of the land, and for six years observed the growth of the city and the great enhancement of the value of the land. Considering her claim as bearing upon the question of laches, the court said: "The laches of the appellant is such as to defeat any rights which she might have had, even if these prior questions were determined in her favor; and in this respect it is worthy of notice that there has been in a few years a rapid and vast change in the value of the property in question. * * * And the question of laches turns, not simply upon the number of years which have elapsed between the accruing of her rights, whatever they were, and her assertion of them, but also upon the nature and evidence of those rights, the changes in value, and other circumstances occurring during that lapse of years. The cases are many in which this defense has been invoked and considered. It is true that, by reason of their differences of fact, no one case becomes an exact precedent for another, yet a uniform principle pervades them all. They proceed on the assumption that the party to whom laches is imputed has knowledge of his rights, and an ample opportunity to establish them in the proper forum; that by reason of his delay the adverse party has good reason to believe that the alleged rights are worthless, or have been abandoned; and that because of the change in condition or relations during this period of delay, it would be an injustice to the latter to permit him to now assert them."

[4] While the present case is a very close one, we think it comes within the analogy of the above rule. Painter held the assignment from Brunk of record for 30 years, and for 15 years resided within 30 miles of the land involved, without taking any steps to secure a

patent. He must be charged with notice of what the government was doing on the land, and the numerous changes and improvements that were being made thereon. It is not the case of where the party against whom laches is charged is in possession of both the legal and equitable title to the property. All that Painter had was an equitable interest, which depended upon his application for patent and compliance with the terms of purchase. His long delay was such as to warrant the government in assuming that he had abandoned his claim, and to justify the consequent changes and improvements which were made, acting upon this assumption.

The judgment is affirmed, with costs.