# Acy v. Whaley.

Jan. 9, 1940.

Tilford & Wetherby for appellant.

Manly & Gaillard for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Reversing.

The appeal is from a judgment enjoining, upon the ground of unfair competition, the defendant, H. Armour Acy, from producing, exhibiting, selling, offering for sale, or permitting others to do so, a certain advertising device, or anything essentially of the same form. The defendant, Acy, appeals.

Both parties have procured patents on devices to be attached on the rear of automobiles displaying advertising cards. The idea is an evolution of advertising on covers of spare tires, which for some time were put on the back of automobiles but more recently placed elsewhere. The plaintiff developed an apparatus made up of fabric on a metal frame. It is thirty inches in diameter and permits the insertion and renewal of circular cards containing advertising matter. It presents the card encircled by a one-inch rim of black fabric. The defendant's device, developing the same idea, is also thirty inches in diameter, used in the same way, and also presents an advertising card encircled by a one-inch rim but of black metal. It is made entirely of metal, and differs in mechanical structure. We agree with the trial court that the display made by the two devices is so similar that the public could and would make no distinction. The court granted the injunction because the plaintiff was the first in the field; the defendant had merely combined many non-essentials in the construction of his device, and was "deliberately pirating the good will of the established concern." Both parties do business in the same way. They retain ownership of the holders or carriers, lease the right to place them on taxicabs, then sell the space and use of the devices to advertisers.

Whaley had applied for a patent of his advertising sign holder in 1933 and obtained it on March 2, 1937. Acy applied for a patent of his carrier in 1935 and it was granted on December 21, 1937. But the plaintiff had begun his business as far back as 1932. In 1937 he was operating in thirty-three cities with a volume of business of $60,000. In order to obtain and retain the prestige of high-class advertising the plaintiff testified he declines to contract with any but concerns which operate first-class taxicabs catering to the highest class of patrons. He limits his service to the better class of advertisers, uses the most artistic displays, and replaces the cards frequently in order to insure freshness and attractiveness. In Louisville his service is exclusively on

"'Yellow Cabs.'" The contract forbids Whaley using his devices on any other taxicabs. The plaintiff established that the defendant's carriers or holders had been placed upon taxicabs catering to the patronage of colored people and upon some cabs of an indiscriminate character. This, he maintains, lowers the dignity and prestige of the scheme. The company in Louisville with which he has his contract made objection, believing that the plaintiff's devices were being used on other cabs.

On the other side, the defendant, who did not begin his business until December, 1937, insists that his conception of the plan or scheme arose without knowledge of plaintiff's use of it although for five years it had been in use in defendant's home city of Louisville. He presents proof tending to show that in some cities the plaintiff has not been as discriminating as he testifies in the selection of taxicabs upon which to place his devices. He further proves that the placing of advertising on automobiles on spare tire covers began long before plaintiff instituted his business.

Such are the contentions of fact. Except as to priority of use and similarity of appearance, the disputed facts are not material to the decision. The question is whether the defendant has the legal right to use a device presenting advertising matter of such similarity as results in the impression upon the public that it is one and the same. We have recently reviewed the development and rationale of the law of "unfair competition" in U-Drive-It Company v. Wright & Taylor, 270 Ky. 610, 110 S. W. (2d) 449, 451, and repeated the following as the basis in the consideration of cases involving it:

> "Unfair competition may be defined as passing off, or attempting to pass off, upon the public the goods or business of one man as being the goods or business of another. Any conduct tending to produce this effect constitutes unfair competition and may be enjoined. The means employed are wholly immaterial."

The principle of the law of unfair competition is common business integrity. Equity will enjoin one from palming off his goods as those of another in order (1) to prevent him from deceiving the people by passing off on them some thing which they believe or might be led to believe is another thing—an article of commerce or a business of professional service, and (2) to protect a

developed property right and good will from appropria-
tion or injurious invasion by deceptive methods.

1. Concerning the first object. It has been said
that deception of the public is "without doubt, a factor
which enters into every court's consideration of what it
shall find to be dishonest and unfair dealing and of what
it shall require for the protection not only of the owner
whose trade has been hurt but of those constituting the
public who have been, or may be, deceived by the wrong-
ful use of a valid trade-mark or by unfair acts and prac-
tices." Rosenberg Bros. & Co. v. Elliott, 3 Cir., 7 F.
(2d) 962, 966. And in General Baking Company v. Gor-
man, 1 Cir., 3 F. (2d) 891, 893, it is said:

"In meritorious cases of this kind, the plain-
tiff is acting, not only in his own interest, but in the
public interest."

Again, it has been said:

"The critical question of fact at the outset al-
ways is whether the public is moved in any degree
to buy the article because of its source and what are
the features by which it distinguishes that source.
Unless the plaintiff can answer this question he can
take no step forward; no degree of imitation of de-
tails is actionable in its absence." Crescent Tool
Company v. Kilborn & Bishop Company, 2 Cir.,
247 F. 299, 300.

The instant case is novel. While the general public
may be interested in things advertised, or the advertise-
ment itself, it does not care who presents it. The public
purchases neither commodity nor service from either
party. The customers or patrons of the parties are not
deceived for they know with whom they are contracting
for advertising service. They buy nothing but the serv-
ice. The defendant had not undertaken to represent his
service as being that of the plaintiff. Though his meth-
od is identical and his design a replica, the same may be
said of almost any competitive business—the display
and sale of shoes, for example. The plaintiff makes no
claim for lost profits and no claim that the defendant's
patrons have thought they were buying plaintiff's serv-
ice. His claim is only that in the "competition for at-
tention" his competitor's presentation of advertising is
not first-class and that a prospective advertiser seeing it
is led to believe that it was his, the plaintiff's, presenta-
tion. That is but an instance of one man offering a less

attractive display. It is not the principle upon which the law of unfair competition rests. "Unfair competition begins where imitation results in the deception of the customers of the party complaining." International Heating Company v. Oliver Oil, Gas B. & M. Company, 8 Cir., 288 F. 708, 711, 30 A. L. R. 611. "Without either direct deception or indirect deception practiced through trade methods, there can be no unfair competition." Mayfield Milling Company v. Covington Brothers & Company, 212 Ky. 262, 278 S. W. 562, 564. See also Newport Sand Bank Company v. Monarch Sand Mining Company, 144 Ky. 7, 137 S. W. 784, 34 L. R. A., N. S., 1040. Lacking from the case, therefore, is any element of deception or misrepresentation to the general public or the ordinary purchaser who might be led astray or wrongfully influenced.

Cases are not in point which involve simulation or imitation of a trade symbol or some word creation or trade name, such as "U-Drive-It Company" or "Artiste Beauty Shoppe." U-Drive-It Company v. Wright & Taylor, supra; Artiste Permanent Wave Company v. Hulsman, 271 Ky. 695, 113 S. W. (2d) 55. Nor is the case within the rule against copying general features of an article which the public has come to know as that of another. Nims on Unfair Competition & Trade-Marks, Section 138.

2. We look to the second object of the law, namely, the protection of plaintiff from invasion of his business. He claims the advantage of origin of the peculiarly distinctive feature of the scheme, although the idea rests upon an older and common practice.

First, as to the idea or conception of the plan. In a monograph on "Recognition of Legal Rights in Ideas," 47 Harvard Law Review, 1419, it is said:

"Cases where protection was sought for business schemes, as for a plan of operation or a method of conveying information, have marked the outstanding point of conflict in this field. Because of the immediate economic value of such ideas and their similarity to presently protected ideal interests, legal recognition has been persistently sought, and it has been, on the whole, as consistently denied."

The denial of the protection from plagiarism of property rights in ideas is confined to abstract ideas because of the necessarily inconclusive and unconvincing

evidence concerning independent conception. When ideas are expressed in some concrete form, the proof may be certain and administrative difficulties are not so great; consequently, the form will be generally protected. 44 Yale Law Journal, 1269. Of the former class is Culbertson's idea of bidding and of card-evaluation in Contract Bridge. Downes v. Culbertson, 153 Misc. 14, 275 N. Y. S. 233

Here, no claim is made that the defendant's device has been substituted or used in place of the plaintiff's, or that his business has in any way been lessened or impaired by the defendant's acts. Both parties have developed an old abstract idea in the same way. Though the device may have been first used by the plaintiff, the idea is something not within the protection of the law of unfair trade or competition.

Second, as to the substantial reproduction of plaintiff's device and confusion resulting therefrom. We are not concerned with any possible infringement of patents. That is something exclusively for the Federal Courts. 48 C. J. 323. Without regard to patents, every one is at liberty to make a replica of any article and no one can obtain a monopoly on it by being the first to manufacture or put it upon the market. It is not unfair trade or competition with the originator of such article that others should manufacture and sell the same thing. John H. Rice & Company v. Redlich, 3 Cir., 202 F. 155, 44 L. R. A., N. S., 1057; Viavi Co. v. Vimedia Company, 8 Cir., 245 F. 289.

Our attention has not been called to any exact precedent applicable to the peculiar facts; nor have we found any. However, we may apply the analogous general rule that, even after long and exclusive use, a trader is not entitled to monopolize a particular color or a particular shape, size or style for the wrapper of a particular class of goods. Nims, Section 332. The contentions made here of a right to enjoin the use of the device could be made as to any similar frame for placards or billboards or other standard signs. Though both the plaintiff and the defendant have chosen to use a round frame, it cannot be regarded as unfair competition in the meaning of the law in the absence of any attempt to palm off upon customers or the public the one device as being the other.

We have not overlooked the claim that the defend-

ant has brought the scheme into disrepute by using less attractive advertising matter and by placing his devices upon taxicabs appealing to a less discriminating patronage. An extreme case of this sort is Philadelphia Dairy Products, Inc., v. Quaker City Ice Cream Company, 306 Pa. 164, 159 A. 3, 6, which involved an unfair method of advertising and selling an inferior ice cream, although there was no direct proof of passing off. The court declared:

> "The lack of business ethics displayed by the defendant in seeeking out as the place of sale of its inferior product the stores where the plaintiff's superior product is advertised and sold, and where the defendant carefully refrains from advertising its own product, invites and receives the condemnation of all who love fair play and scorn chicane and deceit. But unfortunately there is much that is unethical that is not enjoinable. * * * Courts cannot correct all unfair practices brought to their attention any more than legislators can by legislation correct all social maladjustments. Justice Holmes has well said that: 'For most of the things that can properly be called evils the main remedy is for people to become more civilized.' "

Though the defendant did plagiarize plaintiff's idea and did copy the general form of his production so as to give it the general appearance of being the same, and, therefore, from a strictly ethical standpoint treated the plaintiff unfairly, still the nature of the act does not make it unfair competition within the law. It is damnum absque injuria.

It is enough to draw the distinction that the defendant has not deceived the public in anything in which it is interested, nor directly or indirectly represented himself as being the plaintiff to purchasers of the use of the device. The action is not "outside the ordinary course of business" or "tainted by fraud or coercion or conduct otherwise prohibited by law." A. L. A. Schechter Poultry Corporation v. United States, 295 U. S. 495, 532, 55 S. Ct. 837, 844, 79 L. Ed. 1570, 97 A. L. R. 947.

The judgment is reversed, with directions to dismiss the petition.

Judge Tilford, not sitting.