**YELLOW CAB TRANSIT COMPANY v. LOUISVILLE TAXICAB & TRANSFER COMPANY.**

No. 9853.

Circuit Court of Appeals, Sixth Circuit.

Feb. 8, 1945.

---

[5] See, e.g., Hoffman v. Palmer, 2 Cir., 129 F.2d 976, 997.

Duke Duvall, of Oklahoma City, Okl.. (Duke Duvall and Dudley, Duvall & Dudley, all of Oklahoma City, Okl., on the brief), for appellant.

Oldham Clarke, of Louisville, Ky. (Oldham Clarke and Henry E. McElwain, Jr., both of Louisville, Ky., on the brief), for appellee.

Before HAMILTON, MARTIN, and. McALLISTER, Circuit Judges.

MARTIN,. Circuit Judge.

A quarter century ago an enterprising Chicagoan, John Hertz, imported from European travel the notion of painting:

taxicabs yellow. From Chicago this yellow-coloring custom spread nationwide until these bright colored taxicabs now flash daily to and fro on the streets of all American cities of significant size. The yellow coloring of motor vehicles has brought about the present litigation.

Yellow cabs appeared in Louisville, Kentucky, and in Oklahoma City, Oklahoma, almost simultaneously about twenty-five years ago. The appellee Louisville Taxicab and Transfer Company, which, through predecessor corporations, had been engaged in business in Louisville since 1861, adopted around 1919 the custom of painting its cabs and vehicles yellow with black trimming and black fenders; and also adopted trade names in which the word "yellow" was featured, namely, "yellow cab," "yellow cab truck rental," "yellow baggage department" and "yellow ambulance service." The distinctive yellow color scheme and trade names have been used by the appellee continuously since adoption and have been extensively advertised in Louisville for many years, coming to be generally recognized by the public in that locality as the color scheme and trade names of the appellee company. The charter of the appellee company authorized the transportation and transfer of passengers, baggage, merchandise, and freight, for hire, by means of automobiles, taxicabs, auto trucks and other vehicles. Some 242 taxicabs are operated by the appellee in Louisville, Kentucky, and its vicinity; and 146 trucks are owned by appellee and leased to other companies which operate them on a rental basis. These rented trucks are not identified as those of appellee, inasmuch as each bears the lessee's name thereon and is painted such color as the individual lessee desires. The appellee transports baggage by truck to and from railroad stations and also operates an ambulance service.

Approximately five hundred and fifty persons are employed; three hundred thousand to four hundred thousand passengers are transported each month; and, while appellee's activities are largely confined to local business, the State of Kentucky in pending litigation is seeking to have it classified as a common carrier of freight by motor. The appellee is one of the largest companies of its type south of Chicago and its reputation and financial standing in the community in which it operates is excellent.

The reputation and financial standing of the appellant in the territory in which it operates is also excellent; so the controversy here is between two corporate concerns of high repute.

In 1920, the Harrell brothers, having obtained authority from John Hertz of Chicago, organized the Yellow Taxicab and Baggage Company in Oklahoma City. In December 1924, the Harrells organized the appellant corporation, Yellow Cab Transit Company, which engaged in an intrastate business operation between Oklahoma City and adjacent Capital Hill. Appellant sold this bus line in 1926 and thereafter operated, until sold to the Greyhound people in 1929, an interurban bus line from Oklahoma City to Tulsa, Oklahoma.

On January 1, 1930, the appellant company inaugurated its present business, continuously pursued, namely, the transportation by motor vehicles of freight in interstate commerce. Appellant operates its business in the states of Oklahoma, Texas, Kansas, Missouri, Illinois, Indiana and Kentucky, and serves approximately 450 towns. These operations were expanded from inception until, in 1939, through the purchase of the Holsapple Truck Line, the appellant began to transact business in Louisville and substituted for Holsapple Truck Line its own trade name "Yellow Transit Company," which it had used for many years before engaging in business in Kentucky. On January 2, 1943, appellant changed its corporate name from Yellow Cab Transit Company to Yellow Transit Company. Appellant has never engaged in the taxicab business but operates exclusively as a common carrier of freight in interstate commerce. Business is solicited in Louisville through personal contacts of its commercial representatives with the traffic managers of Louisville industrial enterprises standing in need of interstate trucking services. Descriptive folders are sent to these traffic managers and the business is solicited for the "Yellow Transit Company." This cognomen was used by appellant in some early newspaper advertising in Louisville; but at the present time appellant does not advertise its business to the general public in Louisville.

At an investment cost of about $60,000 appellant erected a local terminal in Louisville at Ninth and Madison on a lot purchased in 1940. Previously, two real estate agencies had been employed to find a suita-

ble location; and unsuccessful attempts were made through them to buy two other locations, each much farther from appellee's place of business than was the terminal lot finally acquired. Appellant appears to have been motivated by no deliberate intention of locating its terminal as close as one block from appellee's place of business, which it eventually did. In soliciting business in Louisville, the representatives of the Yellow Transit Company have made no representations whatever that it is in any manner connected with the appellee company; but some slight confusion has resulted between the two companies in the handling of telephone calls and in the delivery of goods and mail to the respective parties. This confusion seems due to no fault of the appellant. All the activities of the appellee are conducted and listed in the telephone book under various names of Yellow Cab, Yellow Cab Ambulance Service, Yellow Cab Baggage Service, Yellow Cab Blue Ribbon Service and Yellow Cab Lunch. In no listing in the telephone book or in the city directory does the appellee use the trade name Yellow Cab Company. The trade name used is Yellow Cab. The word "cab" does not appear in the appellant's trade name under which its business is conducted. It should be observed, moreover, that in the classified section of the telephone directory, the name of appellant appears nowhere in juxtaposition to any of the names used by the appellee. Under both headings "taxicabs" and "transfer companies," appellee is listed and appellant is not; and under the heading "trucking" the appellant is listed as "Yellow Transit Freight Lines" and the appellee is not listed at all. In the main section of the telephone book, commencing with the word "Yellow," the appellee's various trade names are all listed with the same telephone number and the same address; while finally the name "Yellow Transit Company" is listed under a different telephone and a different address.

The operating equipment of the appellant is painted yellow with black fenders and carries in several places in good-sized lettering the name "Yellow Transit Company," with the words "Freight Lines" immediately beneath the name. Included in the equipment are some thirty coupes used by the commercial representatives of the company in different cities. These coupes are trimmed in black and are similar in color and appearance to the taxicabs of the appellee. In Louisville, there are used two of these coupes, bearing the name "Yellow Transit Company," together with the words "Freight Lines"; and, significantly, "No Passengers."

Shortly after the appellant commenced to do business in Louisville, as described, a letter dated October 24, 1939, was received by it from appellee, protesting the use of the word "yellow." Reply was made that the appellant considered that it had the right to operate in Kentucky under the name "Yellow Transit Company" and would do so unless litigation determined otherwise. Expedition of any litigation instituted to dispose of the question was promised. Nearly a year and a half later appellee commenced the instant action in the Jefferson Circuit Court. On petition of appellant the cause was removed to the United States District Court for Western Kentucky on the ground of diversity of citizenship in a controversy involving more than $3,000, exclusive of interest and costs.

The appellee utterly failed to prove the broad allegation of its petition that "the adoption by the defendant of the name Yellow Transit Company, as a name for its business, and the advertisements of its business under the said name was for the purpose and it does deceive prospective customers and the public generally into believing that the services rendered and the business operated by the defendant are the services and business of the plaintiff; that the adoption and use of said name has resulted in the defendant's capitalizing on the name and reputation and good will of the plaintiff and has resulted in the defendant obtaining for its benefit the use of the plaintiff's good name and good will as a commercial asset, and has resulted in the creation of the impression that the plaintiff owned, or operated, or is interested in the business of the defendant."

The foregoing narrative, a large portion of which is based on the findings of the district court and all of which is supported by uncontroverted evidence in the case, demonstrates how far short the appellee fell of proving the broad averments of its petition. No single deceitful action upon the part of the appellant, or any of its representatives, was shown. On the contrary, its entire good faith in entering the Louisville territory in a non-competitive operation abundantly appears from the record. For a decade before it entered Louisville, appellant had con-

ducted its business of motor transportation of freight in interstate commerce. Its financial position was even stronger than that of appellee, its balance sheet showing a capital and surplus in excess of one million dollars after provision for taxes and depreciation. Shippers were invited to investigate its financial stability by reference to Dun & Bradstreet reports or by calling the Louisville Credit Men's Association. From no evidence adduced could it be reasonably inferred that appellant in any manner attempted to palm off its business as that of the appellee. Its Louisville business was conducted with business integrity.

The only finding of fact of the district court upon which any relief whatever might be afforded the Louisville Company is the following: "The color and design of the defendant's equipment with the use of the name 'Yellow Transit Company' thereon is so similar to the color and design of the plaintiff's equipment with the use of the name 'Yellow Cab' on most of the same as to cause the ordinary, casual member of the general public to have the mistaken belief that the defendant's operations in the locality under consideration were a department or subsidiary division of the plaintiff's overall operations. The similarity is such as to likely produce deception."

On the strength of the quoted finding, coupled with its other findings of fact, the district court drew its conclusions of law, which will be hereinafter discussed; and entered a decree enjoining the appellant:

"1. (a) From using, employing, displaying or advertising the trade name 'Yellow Cab' or any variation thereof or similar name in connection with the operation and conduct of its transportation business in Louisville or Jefferson County, Kentucky.

"(b) From using, employing, displaying or advertising the trade name 'Yellow Transit' or any variation thereof or similar name in combination with the distinctive yellow color scheme, designs or markings of the plaintiff, in connection with the operation and conduct of its transportation business in Louisville or Jefferson County, Kentucky."

In overruling the motion of appellant for a new trial, the district judge stated in a memorandum that the contention, resting on the authority of Donnell v. Herring-Hall-Marvin Safe Company, 208 U.S. 267, 28 S.Ct. 288, 52 L.Ed. 481, and L. E. Waterman Company v. Modern Pen Company, 235 U.S. 88, 35 S.Ct. 91, 59 L.Ed. 142, that the decree is too broad and goes beyond appropriate limits in the circumstances, misconstrues the effect of the decree. The district court said: "The decree does not enjoin the defendant from the continued use of the name Yellow Transit or the name Yellow Transit Company. It can continue to use those names so long as other steps are taken in conjunction therewith so as to avoid in the minds of the public any confusion between the plaintiff's business and the defendant's business. This meets the requirements of the two cases above referred to. Subsection (b) of Paragraph 1 of the decree, which is the part complained of, enjoins the use of the name Yellow Transit 'in combination' with the distinctive yellow color scheme of the plaintiff. It is this combination of name and color scheme that causes the confusion, and the decree seems properly directed at the real seat of the trouble. In the Court's opinion if the defendant combines the name Yellow Transit and the distinctive yellow color scheme of the plaintiff, the use of additional words would not be effective in preventing confusion to the public, nor would it provide to the plaintiff the real measure of protection to which it is entitled. The only effective way to obtain the results sought for is to dissolve the combination. The decree in its present form still gives wide latitude to the defendant to operate in Louisville under its own corporate name." 58 F.Supp. 950.

After careful study of the authorities, especially the Kentucky opinions which furnish the law of decision here, we are unable to concur in the reasoning of the district court; and think that Paragraph 1(b) of the decree was far too broad in injunctive scope, in requiring the appellant, engaged in a wholly different transportation business from that of the appellee, to abandon either its long-used trade name, "Yellow Transit Company," or its own long-used distinctive color scheme in conducting its non-competitive business in Louisville. From the most favorable aspect of protection of appellee's rights against adoption by others of the words and color used by it in connection with its business, which have acquired a secondary meaning as identifying in the public mind appellee's business and transportation serv-

ice, we are confronted with a border-line case in the field of the constantly expanding doctrine of unfair competition. From expressions in the earlier opinions, it is probable that at one time the appellee herein would have been entitled to no equitable relief whatever; for there is no competition between the parties, nor have the trade practices of appellant been either fraudulent, or unfair. See, for example, the lengthy discussion of Chief Justice Hargis in Avery & Sons v. Meikle & Co., 81 Ky. 73, 90, 101, 102. See also Kellogg Toasted Cornflake Co. v. Quaker Oats Co., 6 Cir., 235 F. 657, 664; Armour & Co. v. Louisville Provision Co., 6 Cir., 283 F. 42; Howe Scale Company v. Wyckoff, Seamans & Benedict, 198 U.S. 118, 140, 25 S. Ct. 609, 49 L.Ed. 972; Standard Paint Co. v. Trinidad Asphalt Manufacturing Company, 220 U.S. 446, 461, 31 S.Ct. 456, 55 L.Ed. 536.

■ But with the ever-increasing development of American industry, the equitable principle of protection of the secondary meaning of words or symbols, as representing the source or origin of goods, was broadened in its application to new situations where, had the doctrine been confined or narrowed, the courts would have been powerless to do equity. As was said in U-Drive-It Co. v. Wright & Taylor, 270 Ky. 610, 615, 110 S.W.2d 449, 452: "We have thus come a long way from the formative cases in England and America. Still farther removed from old conceptions, are some of the recent acts of Congress, and an act of the General Assembly of Kentucky, of 1936 (chapter 109), denouncing certain trade practices as unfair and illegal. Section 4748h-1 et seq., Kentucky Statutes. So we may well heed Mr. Justice Holmes' admonition against relying too implicitly on 'whatever generality of expression there may have been in the earlier cases.' L. E. Waterman Company v. Modern Pen Company, 235 U.S. 88, 94, 35 S.Ct. 91, 92, 59 L.Ed. 142. This modern concept or policy in respect of regulating trade competition suggests that any act smacking of unfair competitive methods should be viewed with a critical and suspicious eye." Consult the following illustrative opinions from this circuit: G. & C. Merriam Co. v. Saalfield, 6 Cir., 198 F. 369; O. & W. Thum Co. v. Dickinson, 6 Cir., 245 F. 609, 615; Wisconsin Electric Co. v. Dumore Co., 6 Cir., 35 F.2d 555; Shaler Co. v. Rite-Way Products,

6 Cir., 107 F.2d 82; Hemmeter Cigar Co. v. Congress Cigar Co., 6 Cir., 118 F.2d 64, 68 et seq.; Mishawaka Rubber & Woolen Manufacturing Co. v. S. S. Kresge Co., 6 Cir., 119 F.2d 316.

It should be observed, however, that in American Fork & Hoe Co. v. Stampit Corporation, 6 Cir., 125 F.2d 472, 475, 476, caution was exercised by this court against over-extension of the doctrine of secondary meaning. A like restraint was exercised by the Supreme Court in Kellogg Company v. National Biscuit Company, 305 U.S. 111, 118, 119, 122, 59 S.Ct. 109, 83 L. Ed. 73.

■ As was commented in Coca-Cola Co. v. Carlisle Bottling Works, 6 Cir., 43 F.2d 119, 121, "reported cases are helpful only insofar as they lay down general rules of decision." Each case must be adjudged on its own particular facts. This is especially true of unfair competition cases. The interested student may find an exhaustive annotation of the doctrine of secondary meaning in the law of trademarks and unfair competition in 115 A.L. R., pages 1067 to 1140; and also a comprehensive editorial annotation on the subject of actual competition as a necessary element of trade-mark infringement or unfair competition in 148 A.L.R., pages 12 to 125. All the leading cases are there annotated and discussed.

■ If guidance to decision of the instant case may be found in local law, the opinions of the Kentucky courts are, of course, controlling. Pecheur Lozenge Co., Inc., v. National Candy Co., 315 U.S. 666, 667, 62 S.Ct. 853, 86 L.Ed. 1103; Kellogg Company v. National Biscuit Company, 305 U.S. 111, footnote on page 113, 59 S.Ct. 109, on page 111, 83 L.Ed. 73; Mishawaka Rubber & Woolen Manufacturing Co. v. S. S. Kresge Co., 6 Cir., 119 F.2d 316.

Upon the general subject matter of unfair competition, the opinions of the Court of Appeals of Kentucky will be found to tie in consistently with those of other jurisdictions, including those of this court, which have been frequently cited by the Kentucky court.

In Grocers' Baking Co. v. Sigler, 132 F.2d 498, 501, 502, we had occasion to study the Kentucky decisions on unfair competition and found that "to constitute unfair competition [in Kentucky] it is not necessary that there be a purpose to pass

off one's product as that of another, it being sufficient that because of insignia or similarity of product purchasers believe it to be the product of another, or that the insignia or symbol has a tendency to, and probably will, deceive some part of the public"; and that "the owner of a trade-mark or trade name is entitled to protection against innocent as well as malicious infringers." Compare Saxlehner v. Nielsen, 179 U.S. 43, 21 S.Ct. 16, 45 L.Ed. 77.

In Newport Sand Bank Co. v. Monarch Sand Mining Co., 144 Ky. 7, 12, 137 S.W. 784, 34 L.R.A.,N.S., 1040, the Court of Appeals of Kentucky held that it is unnecessary to show that anyone has been actually misled by a similarity in names but is sufficient to show that the name selected is so similar to that used by a competitor as to be likely to produce deception. Intent to deceive was said to be the gravamen, readily presumable from the very fact of adoption of a trade-mark or trade name similar to that of a competitor. See to same effect Mayfield Milling Company v. Covington Brothers & Co., 212 Ky. 262, 267, 278 S.W. 562; Crutcher & Starks v. Starks, 161 Ky. 690, 695, 171 S.W. 433. In the last cited case it was held that even though a new corporation adopts its corporate name in good faith and without intention to injure an older concern or to confuse or mislead the public, unfair competition exists if a similarity in names tends to produce such injury or confusion.

Churchill Downs Distilling Co. v. Churchill Downs, Inc., 262 Ky. 567, 569, 571, 572, 575, 90 S.W.2d 1041, 1043, supports the contention that the appellee herein is entitled to some character of injunctive relief. In that important Kentucky case, it was held that Churchill Downs, Inc., which maintained a racing plant of widespread fame where the Kentucky Derby is annually run, was, without proof of special damage, entitled to an injunction restraining the distilling company from using "Churchill Downs" on its whisky labels and as part of its corporate name; notwithstanding the fact that such name had been used by numerous others engaged in wholly different businesses. The distilling company contended that there must be competition of some sort in order to maintain a case of unfair competition; but the Kentucky court rejected the argument, saying that "the tendency of the courts has been and is to widen the scope of protection in unfair competition, and to hold that

it is not confined to actual market competition." The opinions of this court in Wisconsin Electric Co. v. Dumore Co., supra; Kellogg Toasted Cornflake Co. v. Quaker Oats Co., supra; and in Vogue Co. v. Thompson-Hudson Co., 6 Cir., 300 F. 509, were cited among other authorities. It was said to be unnecessary that it be shown that anyone had actually been misled by the similarity of names but that it was sufficient if the use of the name "Churchill Downs" was likely to produce deception. It was pointed out that it had been clearly established that the public had not been induced to buy the goods of Churchill Downs Distilling Company under belief that the same were manufactured by Churchill Downs, Inc. At the conclusion of the opinion, Judge Richardson said: "The pending case does not involve unfair competition in the sale of goods, but the unfair appropriation of a business, a corporate name—a species of property—with the intent to profit in the sale of goods not related in character to the business conducted by Churchill Downs, Inc., by the means of the ingenious use of a corporate name and the advertisements of its products, to deceive the public and to induce it to regard the distilling company's products, debts, freight shipments, and mail as those of Churchill Downs, Inc., which clearly entitled it to injunctive relief."

In another Kentucky case, a demurrer was overruled, and a cause of action held to be stated in a petition filed by a corporation engaged, under its corporate name "The U-Drive-It Company," in renting self-driven automobiles, to enjoin a corporation subsequently entering such business from using the names "Francis You Drive-It Garage" or the "You Driveit Francis Garage," and from maintaining on its premises signs embracing the phrase "U-Drive-It." U-Drive-It Co. v. Wright & Taylor, 270 Ky. 610, 618, 620, 110 S.W.2d 449. The court stated that the secondary meaning of a trade name, or trade-mark, may be localized; and reiterated its doctrine that the real question is whether there is a tendency and probability of deceiving at least a part of the public, rather than that there has been actual deception. Compare Artiste Permanent Wave Co. v. Hulsman, 271 Ky. 695, 113 S.W.2d 55.

The main argument of appellant is that the law of unfair competition is founded upon common business integrity; and that

"the proof showing and the court finding no palming off by appellant of its business for that of appellee, but only a slight confusion of telephone calls and mis-delivered mail which resulted from the common use of the primary color yellow in their names and the painting of their equipment, injunctive relief is not justified, particularly in the absence of competition between the parties and any showing of injury."

Acy v. Whaley, 281 Ky. 400, 403, 404, 405, 136 S.W.2d 575, the latest unfair competition case published in the Kentucky Reports, is stressed by appellant in support of its position. There, it was held that one engaged in displaying circular advertising cards in frames on the rear of taxicabs could not enjoin another on the ground of unfair competition from engaging in a similar business, no deception having been practiced by the defendant on the public, or on those buying advertising space, and the advertising idea of the plaintiff having been derived from an old and common practice. In the opinion, it was stated that the case was novel; that the court's attention had been directed to no exact precedent applicable to its peculiar facts, and that none had been found. Cases involving "simulation" or imitation of trade symbols or trade names, or cases in which the general features of an article which the public has come to know as that of another have been copied, were not considered in point; and there was found lacking any element of deception or misrepresentation which might lead astray or wrongfully influence the general public, or the ordinary purchaser. It was pointed out that the public purchases neither commodity nor service from either party. The court asserted (Op. 281 Ky. at page 406, 136 S.W.2d at page 579): Though the defendant did plagiarize plaintiff's idea and did copy the general form of his production so as to give it the general appearance of being the same, and, therefore, from a strictly ethical standpoint treated the plaintiff unfairly, still the nature of the act does not make it unfair competition within the law. It is damnum absque injuria." The opinion asserted, 281 Ky. at page 403, 136 S.W.2d at page 577, that "the customers or patrons of the parties are not deceived for they know with whom they are contracting for advertising service," which is all they buy; and that the defendant had not undertaken to represent his service as being that of the plaintiff. The

Kentucky Court's own analysis of the case seems to distinguish it clearly from the facts confronted here.

In our judgment, the full import of the Kentucky decisions, in relation each to the other and all to the body of the law of unfair competition as declared in other jurisdictions, impels the conclusion that the appellee is entitled to some injunctive relief, though certainly not to relief as broad as that granted in the district court. This conclusion is unshaken by consideration of all the authorities cited by appellant, including those especially stressed: Lawyers Title Ins. Co. v. Lawyers Title Ins. Corporation, 71 App.D.C. 120, 109 F.2d 35; Ætna Casualty & Surety Co. v. Ætna Auto Finance, Inc., 5 Cir., 123 F.2d 582; American Steel Foundries v. Robertson, 269 U.S. 372, 46 S.Ct. 160, 70 L.Ed. 317; Schlitz Brewing Co. v. Houston Ice Co., 250 U.S. 28, 39 S.Ct. 401, 63 L.Ed. 822; Leschen & Sons Rope Co. v. Broderick & Bascom Rope Co., 201 U.S. 166, 26 S.Ct. 425, 50 L.Ed. 710. The opinion of Mr. Justice Brandeis in Kellogg Company v. National Biscuit Company, 305 U.S. 111, 119, 122, 59 S.Ct. 109, 83 L. Ed. 73, recognized that an obligation rested upon the Kellogg Company to identify its own product, shredded wheat, lest it be mistaken for that of the National Biscuit Company; and declared that the Kellogg Company had taken every reasonable precaution to prevent confusion or the practice of deception in the sale of its product.

In L. E. Waterman Company v. Modern Pen Company, 235 U.S. 88, 94, 35 S.Ct. 91, 92, 59 L.Ed. 142, Mr. Justice Holmes declared: "But, whatever generality of expression there may have been in the earlier cases, it now is established that when the use of his own name upon his goods by a later competitor will and does lead the public to understand that those goods are the product of a concern already established and well known under that name, and when the profit of the confusion is known to and, if that be material, is intended by the later man, the law will require him to take reasonable precautions to prevent the mistake. Herring-Hall-Marvin Safe Co. v. Hall's Safe Co., 208 U.S. 554, 559, 28 S.Ct. 350, 52 L.Ed. 616, 620." Compare Donnell v. Herring-Hall-Marvin Safe Co., 208 U.S. 267, 28 S.Ct. 288, 52 L.Ed. 481.

We think the district court correctly concluded upon the authority of

United Drug Co. v. Theodore Rectanus Co., 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141, and Hemmeter Cigar Co. v. Congress Cigar Co., 6 Cir., 118 F.2d 64, 71, supra, that "although the defendant may have originally acquired its name, color scheme and design in a legitimate way and had the right to so use it in the territory in which it was operating prior to engaging in business in Louisville, Kentucky, yet when it enters new territory it must enter it subject to whatever rights have previously been acquired there by others." [53 F.Supp. 272, 277.]

The district court rejected the insistence of appellant, renewed here, that this action is barred by laches. The conclusion was stated that delay of the plaintiff in filing suit "does not constitute laches such as to bar the relief sought herein." The district judge cited the following cases in support of his ruling: New York Underwriters Ins. Co. v. Louisville & N. R. Co., 285 Ky. 561, 568, 148 S.W.2d 710; Wisdom's Adm'r v. Sims, County Supt. of Schools, 284 Ky. 258, 144 S.W.2d 232; Mattison-Greenlee Service Corporation v. Culhane, 7 Cir., 103 F.2d 608, 610; United States ex rel. Givens v. Work, Sec'y of the Interior, 56 App.D.C. 330, 13 F.2d 302.

■ As was well said by District Judge Ford in Richardson v. Blue Grass Mining Co., D.C., 29 F.Supp. 658, 665 (affirmed 6 Cir., 127 F.2d 291; certiorari denied 317 U.S. 639, 63 S.Ct. 30, 87 L.Ed. 515): "There is no fixed rule by which to measure the degree of laches which is sufficient to bar the enforcement of a right. Each case must be determined according to its own particular facts and circumstances."

■ In our judgment, the district court applied correctly the principles of law governing laches to the circumstances of the case and properly denied the defense.

■ The appellee has no exclusive right to the use of the primary color yellow; but is entitled to protection in its long established use of the color yellow on its taxicabs in Louisville, inasmuch as it has acquired a good will by use of the yellow color scheme on taxicabs by virtue of appropriate application of the doctrine of secondary meaning. Relief is not precluded by the fact that the appellant is not an actual competitor of the appellee. The extent of the relief to be accorded appellee is for determination upon equitable principles.

■ As has been previously indicated, paragraph 1(b) of the decree entered below is too broad and should be stricken; and, in lieu thereof, provisions should be inserted in the decree which will fairly balance the equities between the parties. This substituted paragraph should be drawn and entered in such form as to comply with the following directions.

The appellant should be required to place or paint large and legible signs on its terminal building in Louisville, bearing the words: "Yellow Transit Company, of Oklahoma City, Oklahoma. Freight Lines." Similar insignia should be placed in readily readable fashion on its pick-up trucks used in Louisville and on its commercial coupes used by its salesmen. These commercial coupes should not be painted yellow but should be painted some other color or colors so that these vehicles may not be confused, by casual observers or unwary persons, with the yellow taxicabs of the appellee. Appellant should not be required, however, to paint its pick-up trucks a different color than yellow; for the reason that the appellee rents its trucks, which are painted such colors as are desired by the various lessees and carry thereon the lessees' respective names.

Appellant should be permitted the continued use of its yellow painted trucks, unchanged, in the movement of goods while engaged in interstate freight transportation in and out of Louisville, Kentucky.

Conformity with these directions in the amended decree would, in our judgment, afford appellee the full relief to which it is entitled in the circumstances of the case.

The decree will be modified as directed and, as so modified, affirmed.